UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MADOU TOURE, A #076 244 325,<br><br>　　　　Petitioner,<br><br>vs.<br><br>ANDREW HURON, Officer-in-Charge, South Texas Processing Center; JOSE M. CORREA, San Antonio Field Operations Director; ET AL.,<br><br>　　　　Respondents. | §<br>§<br>§<br>§<br>§<br>§   CIVIL NO. SA-20-CV-1036-JKP<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## ORDER OF DISMISSAL

Before the Court are the following pleadings: Petitioner, Madou Toure's ("Petitioner") 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus ("Section 2241 Petition") (ECF No. 1); Respondents' Motion to Dismiss (ECF Nos. 6, 10), to which Petitioner has responded (ECF Nos. 8, 9, 11); Respondents' Motion for Leave to File Sealed Documents (ECF No. 7); Petitioner's Motion for Default Judgment (ECF No. 12), to which Respondents have responded (ECF No. 13); and Respondents' Motion to Strike (ECF No. 14). Upon consideration, Respondents' Motion for Leave to File Sealed Documents (ECF No. 7) is **GRANTED**; Petitioner's Motion for Default Judgment (ECF No. 12) is **DENIED**; Respondents' Motion to Strike (ECF No. 14) is **GRANTED**; and Respondents' Motion to Dismiss (ECF No. 6) is **GRANTED**.

### BACKGROUND

Petitioner is a native and citizen of Liberia who is currently being detained at the South Texas ICE Processing Center ("STIPC") in Pearsall, Texas. (ECF No. 1 at 2).

Petitioner was charged under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA" or the "Act") following his conviction of an aggravated felony as defined in § 101(a)(43) of the Act, for an offense involving fraud or deceit in which the loss to the victim(s) exceeded

$10,000. (*See* ECF No. 7, Exh. A, IJ Order, dated November 2019, at 1). Additionally, Petitioner was charged under § 237(a)(1)(B) of the Act for having remained in the United States longer than permitted following his admission as a nonimmigrant. (*Id*.).

On November 10, 1999, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") to Petitioner. (*Id.*). On May 5, 2000, the Immigration Judge ("IJ") held that due to his conviction for an aggravated felony and a particularly serious crime, Petitioner was not eligible for asylum. (*Id*. at 2). However, the Court held that Petitioner should be granted relief from removal because he had not been convicted of a particularly serious crime for purposes of withholding of removal under the Act and further, DHS had not sufficiently established changed circumstances as required to rebut the presumption of a well-founded fear of future persecution in light of Toure's testimony establishing past persecution. (*Id*.).

On April 1, 2019, Petitioner was taken into custody following his conviction of assault causing bodily injury of a family member. (*Id.* at 25, 26). On May 10, 2019, the IJ granted DHS's motion to reopen and transfer venue to the Immigration Court in Pearsall, Texas. (*Id*. at 2). On June 4, 2019, Petitioner made a request to Immigration and Customs Enforcement ("ICE") for release pursuant to 8 CFR § 1208.24(b)(3); *Mutsvene v. Lynch,* 647 F. App'x 369 (5th Cir. 2016). (*See* Huron Decl., attached hereto as Exh. B, at 6, ¶ 28). Petitioner's request was denied due to his extensive criminal history and the threat to the public. (*Id*.).

On August 28, 2020, Petitioner filed the present Section 2241 Petition, alleging that "his detention violates his Fifth Amendment right to substantive due process due to conditions of confinement, as well as ICE's failure to provide adequate medical care." (ECF No. 1). According to Petitioner, who is a 46 year old male, he suffers from asthma, hepatitis B and C, chronic liver disease, and post-traumatic stress disorder. (*Id.* at 2). Petitioner asserts he is medically vulnerable

because of these health conditions which, he contends, place him at a higher risk of complications from COVID-19. (*Id.*). As a result of these underlying health conditions, as well as the preliminary injunction issued in *Fraihat v. ICE*, 445 F. Supp. 3d 709 (C.D. Cal. 2020), Petitioner seeks his immediate release from detention.[1] (*Id.* at 1-2).

## I.   Motion for Leave to File Sealed Document

Respondents seek leave to file several exhibits under seal relating to Petitioner's request for asylum. (ECF No. 7). Upon consideration, and there being no response, the motion is **GRANTED**. *See* LOCAL COURT RULES CV-7(e)(2).

## II.   Motion for Default Judgment

Petitioner has filed for Motion for Default Judgment, maintaining Respondents failed to respond to his petition. (ECF No. 12). As it appears Respondents timely filed their Motion to Dismiss (ECF No. 6) in response to the Petition, Petitioner's Motion for Default Judgment is **DENIED**. *See* FED. R. CIV. P. 12(a).

## III.   Motion to Strike

Respondents have also filed a Motion to Strike Petitioner's Sur-Reply, filed on November 16, 2020. (ECF No. 14). Pursuant to Local Court Rules, once a party has filed a reply to a motion, no further submissions are permitted absent leave of court. *See* LOCAL COURT RULES CV-7(f). In the present case, Petitioner has filed a response (ECF No. 8), a Supplement (ECF No. 9) and a Reply (ECF No. 11). Because the Court finds further argument unnecessary, Respondents' Motion to Strike Petitioner's sur-reply (ECF No. 11) is **GRANTED**. (ECF No. 14).

---

[1] Petitioner also invokes this Court's jurisdiction under the Administrative Procedure Act ("APA"), the Declaratory Judgment Act, and the All Writs Act. (ECF No. 1 at 2). However, he fails to assert any claim under the APA; further, neither the Declaratory Judgment Act nor the All Writs Act are independent sources of jurisdiction. *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001); *Texas v. Real Parties In Interest*, 259 F.3d 387, 392 (5th Cir. 2001).

### IV. Motion to Dismiss

Petitioner has filed a Section 2241 Petition, seeking his immediate release from detention pending removal proceedings, maintaining his conditions of confinement place him at risk of contracting COVID-19, which, due to his underlying health conditions, he maintains would result in serious illness or death. (ECF No. 1). Respondents have filed a Motion to Dismiss and request that this Court dismiss the Petition for the following reasons: 1) Petitioner's conditions of confinement claim is not cognizable within the habeas context; 2) even if this Court has subject matter jurisdiction, Petitioner has failed to state a legally cognizable claim for a lack of substantive due process based on conditions of confinement; 3) Respondents have considered whether Petitioner's health conditions justify his release in accordance with the *Fraihat* injunction and determined he is a danger to society and a flight risk such that he should remain detained; 4) the Rehabilitation Act provides Petitioner no private right of action against the federal government in this case; and 5) to the extent the Rehabilitation Act may be applicable, Petitioner has failed to state a legally cognizable claim. (ECF No. 6).

1. **Jurisdiction**

Respondents initially argue that this Court lacks jurisdiction to review Petitioner's Section 2241 Petition because a conditions of confinement claim must be pursued in a civil rights action, rather than a writ of habeas corpus. Generally, Section 2241 applications are used to challenge the length of a prisoner's sentence, while challenges to the conditions of confinement are brought under 42 U.S.C. § 1983. *See Davis v. Fechtel*, 150 F.3d 486, 487–88, 490 (5th Cir. 1998). However, "[w]hen a federal prisoner contests being confined at all and, *in addition*, the conditions of the confinement, "a court [can] split the complaint and deal with that portion which is properly before it." *Cheek v. Warden of Fed. Med. Ctr.*, No. 20-10712, 2020 WL 6938364, at *1 (5th Cir.

Nov. 24, 2020) (emphasis added) (citing *Shaw v. Briscoe*, 526 F.2d 675, 676 (5th Cir. 1976) and *Preiser v. Rodriguez*, 411 U.S. 475, 499 & n.14 (1973)).

In *Cheek*, a federal prisoner sought release from a Federal Medical Center to home confinement due to the global pandemic created by COVID-19. *Cheek*, 2020 WL 6938364, at *1. The district court dismissed the case for lack of subject-matter jurisdiction upon finding that Section 2241 was not a proper vehicle for the claims. *Id*. On appeal, the Fifth Circuit held that Cheek's request to be released from a medical center to home confinement was proper under Section 2241 because he was "challenging the fact and duration of his confinement." *Id.* (citing *Coleman v. Dretke*, 409 F.3d 665, 669 (5th Cir. 2005) (providing that "release from physical confinement in prison constitutes release from custody for habeas purposes, even though the state retains a level of control over the releasee")). The Court reasoned that because Cheek argued that the constitutional violations occurring as a result of the pandemic could only be remedied by release, "the claim could be construed as also contending that in light of the pandemic [the prisoner] should be released from custody because there [were] no conditions of confinement that could adequately prevent an Eighth Amendment violation." *Cheek*, 2020 WL 6938364, at *2 (quoting *Medina v. Williams*, 823 F. App'x 674, 676 (10th Cir. 2020)). While ultimately the Court found the remedy sought was outside the scope of its authority in Cheek's case, the Court held that because a favorable ruling from the district court would accelerate his release, Cheek's "request for release to home confinement in the context of a global pandemic was properly brought as an application for a writ of habeas corpus under Section 2241." (*Id.*).

In the present case, the Petitioner seeks to be released on parole or an ICE bond due to the threat posed by COVID-19 given his underlying health conditions. As in *Cheek*, Petitioner appears

to argue that the constitutional violations occurring as a result of the pandemic can only be remedied by his release. As such, this Court has jurisdiction to consider his claim. *Id.*

## 2. Conditions of confinement

Petitioner maintains his "substantive due process rights under the Fifth Amendment are being violated due to the conditions of confinement and/or inadequate medical care due to the COVID-19 pandemic and [Petitioner's] individual health risks." (ECF No. 1 at 11). A "condition of confinement" case is a challenge to the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc). In such a case, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). If the analysis reveals that "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539.

A detainee does not establish a conditions of confinement case merely by alleging that the detention center has disease or infection present as "the incidence of diseases or infections, standing alone, [cannot] imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks." *Shepherd v. Dallas Cty.*, 591 F.3d 445, 454 (5th Cir. 2009). Nor does "the fact that ICE may be unable to . . . fully guarantee [Petitioner's] safety [ ] amount to a violation of his constitutional rights [so as to] warrant his release." *Sacal-Micha*, 449 F. Supp. 3d 656, 665–66 (S.D. Tex. 2020). "Rather, a detainee challenging [an institution's] conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process rights." *Shepherd*, 591 F.3d at 454. "Proving a pattern is a heavy burden, one that has rarely been met in our caselaw." *Id.* at 452.

In this case, Petitioner has not shown a pervasive pattern of serious deficiencies in providing for his basic human needs. Although he generally alleges he has been denied adequate medical care, Petitioner provides no facts to support his conclusory statements, much less demonstrates a pervasive pattern of serious deficiencies. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (providing that a conclusory complaint—one that fails to state material facts or merely recites the elements of a cause of action—may be dismissed for failure to state a claim). Moreover, Petitioner attaches excerpts of his medical records to his Petition which belie his claim and demonstrate he has received care for his asthma, hepatitis, and psychiatric needs. (ECF No. 1 at 15-28).

Likewise, although Petitioner takes issue with typical detention-facility conditions such as "shared" eating utensils, dishes, bathroom, shower, telephones, and tables, as well as what he perceives as inadequate social distancing, he fails to allege sufficient facts to demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs. *Shepherd*, 591 F.3d at 454. Here, it appears that since April of 2020, significant measures have been implemented to ensure detainees are appropriately housed and available mitigation measures are implemented during this pandemic. (*See* Huron Decl., attached hereto as Exh. B). These measures include, but are not limited to, the following: ICE epidemiologists have been tracking the outbreak since the onset of reports of COVID-19, regularly updating infection prevention and control protocols, and issuing guidance to field staff on screening and management of potential exposure among detainees in accordance with recommendations by the Centers for Disease Control ("CDC"); STIPC maintains populations within its approved capacities and is not overcrowded; the facility has increased sanitation, is providing medical supplies, and has instituted medical screening procedures, as well as education initiatives among detainees; and ICE reviews its detained

population to identify people who are "at higher risk for severe illness," as identified by the CDC, and determines if detention remains appropriate for such people, considering the detainee's health, public safety, and mandatory detention requirements and adjusting custody conditions, when appropriate, to protect the health, safety, and well-being of its detainees. (*Id.*). Given Respondents' adherence to CDC guidelines, Petitioner fails to demonstrate his conditions of confinement are unconstitutional. *See Valentine v. Collier*, 956 F.3d 797, 801–03 (5th Cir. 2020) (per curiam) (providing there is no precedent holding that the CDC's recommendations are insufficient to satisfy the Eighth Amendment).

Moreover, Petitioner fails to show that officials have acted with deliberate indifference to his medical needs or safety. *See, e.g., Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (applying deliberate indifference standard to cruel and unusual punishment claim); *Baughman v. Garcia*, 254 F. Supp. 3d 848, 868–69 (S.D. Tex. 2017) aff'd sub nom. *Baughman v. Seale*, 761 F. App'x 371 (5th Cir. 2019) (applying deliberate indifference standard to a due process claim). Although Petitioner complains the precautions taken are insufficient to address his medical needs and conditions of confinement, he fails to demonstrate Respondents subjectively knew or believed the measures taken were inadequate to abate and control the spread of the virus so as to demonstrate Respondents were deliberately indifferent to Petitioner's medical needs or safety. *See Valentine*, 956 F.3d at 801–03.

Accordingly, the Court finds Petitioner has failed to demonstrate that the conditions of his confinement at the South Texas ICE Processing Center in Pearsall, Texas violate his due process rights.

### 3. *Fraihat* Injunction

Petitioner also contends that due to his underlying medical conditions, he falls within both subclasses certified in *Fraihat v. ICE,* 445 F. Supp. 3d 709 (C.D. Cal. 2020). Petitioner maintains that, as such, he is entitled to release from confinement.

In *Fraihat*, the issue presented was whether the conditions in which ICE detainees are held during the pandemic violate the Constitution, and if so, what measures can and should be taken to ensure constitutionally permissible conditions of detention. *Id.* The Court subsequently entered an injunction intended to ensure minimum lawful conditions of confinement at all immigration facilities during the pandemic. *Id.* at 709. Notwithstanding Petitioner's assertion, the *Fraihat* injunction does not mandate the release of all medically vulnerable individuals. In fact, the *Fraihat* Court specifically noted that "[t]he class's interest is not in release, but in not being subject to unlawful conditions of confinement." *Id.* at 740, n.22.

As a result of the *Fraihat* litigation, on March 27, 2020, Enforcement and Removal Operations ("ERO") at STIPC conducted a custody review of Petitioner based on his medical conditions that were classified as COVID-19 risk factor subclasses, in accordance with the CDC guidelines. (*See* Huron Decl., attached hereto as Exh. B, ¶ 27). The ERO weighed the risk to public safety against the fact that Petitioner was classified with COVID-19 risk factors enumerated in *Fraihat* in accordance with CDC guidelines. (*Id.*, ¶ 28). Petitioner was found to have a significant criminal history, including convictions for crimes of violence, driving while intoxicated, and other crimes that demonstrate he would pose a serious danger to public safety if released. (*Id.*) Additionally, Petitioner has been convicted of an aggravated felony and is otherwise classified as mandatory detention pursuant to INA § 236(c). (*Id.*). Subsequent reviews and requests for release,

including three additional requests for Custody Redetermination filed by Petitioner, have reached the same result. (*Id.,* ¶¶ 30–32).

As Petitioner has been evaluated as required by the *Fraihat* injunction, he fails to demonstrate he is being subjected to unlawful conditions of confinement.

### 4. Rehabilitation Act

Petitioner also argues his detention violates Section 504 of the Rehabilitation Act. (ECF No. 1 at 8). However, as Respondents point out in their motion, courts across the country— including in this Circuit—have precluded federal detainees from bringing Rehabilitation Act claims against the federal agencies housing them. *See, e.g., Roark v. Flanery*, No. 5:12-CV-60, 2014 WL 4447451, at *27 (E.D. Tex. Sept. 9, 2014) ("[T]he Bureau of Prisons does not fit within the definition of 'programs or activities' governed by § 794(a)."); *Hickman v. Mercado*, No. 4:13-CV-797-O, 2014 WL 66778, at *7 (N.D. Tex. Jan. 8, 2014) (finding that an action against federal government officials in their official capacity is an action against the United States and its agencies who are, therefore, shielded by sovereign immunity); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (holding that Rehabilitation Act does not apply to federal prisons); *Hurtado v. Reno*, 34 F. Supp. 2d 1261, 1264 (D. Colo. 1999) (holding that an immigration detainee could not bring a Rehabilitation Act claim against Immigration and Naturalization Service ("INS"), the predecessor to ICE); *see also Inko-Tariah v. Lappin*, No. 5:05-CT-585-H, 2009 WL 8652932, at *1 (E.D.N.C. Apr. 1, 2009), *aff'd*, 346 F. App'x 915 (4th Cir. 2009) ("Upon a thorough review of cases interpreting the application of the Rehabilitation Act, the court concludes that the Act does not provide a cause of action for inmates in federal prisons."); *Sandler v. Anderson*, No. 08-3030-CV-S-RED-H, 2008 WL 2610130, at *2 (W.D. Mo. July 2, 2008) ("[T]he Rehabilitation Act does not apply to federal inmates.").

In any event, to establish a prima facie case under the Rehabilitation Act, a plaintiff must show: "(1) the plaintiff is an individual with a disability under the Rehabilitation Act; (2) the plaintiff is otherwise qualified for participation in the program; (3) the plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his or her disability; and (4) the relevant program or activity is receiving federal financial assistance." *Spann ex rel. Hopkins v. Word of Faith Christian Ctr. Church*, 589 F. Supp. 2d 759, 764 (S.D. Miss. 2008); *Cadena v. El Paso Cty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citation omitted). In the present case, Petitioner fails to demonstrate he is being treated differently because of his alleged disability. *Id.* Accordingly, Petitioner's claim, if any, under the Rehabilitation Act fails.

## CONCLUSION

For the foregoing reasons, Petitioner's Section 2241 Petition should be **DISMISSED**.

Accordingly, the Court enters the following Orders:

**IT IS ORDERED** that Respondents' Motion for Leave to File Sealed Documents (ECF No. 7) is **GRANTED**;

**IT IS FURTHER ORDERED** that Petitioner's Motion for Default Judgment (ECF No. 12) is **DENIED;**

**IT IS FURTHER ORDERED** that Respondents' Motion to Strike (ECF No. 14) is **GRANTED;**

**IT IS FURTHER ORDERED** that Respondents' Motion to Dismiss (ECF No. 6) is **GRANTED;** and

**IT IS FINALLY ORDERED** that Petitioner' Madou Toure's 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus (ECF No. 1) is **DISMISSED**.

**IT IS SO ORDERED this 8th day of January 2021.**

*[signature: Jason Pulliam]*
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**